UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD DEE MCGLOWN,

               Petitioner,

v.                                 CASE NO. 15-CV-11624
                                 HONORABLE SEAN F. COX

 BONITA HOFFNER,

               Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Leonard Dee McGlown  has filed a  *pro se* habeas petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  in which he challenges his convictions for first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), conspiracy to commit murder, Mich. Comp. Laws § 750.157a, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b.  For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

1

# I.    Background

The Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g., Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the shooting of Marcus Newsom on February 9, 2002. According to the prosecution, defendants, along with codefendant Cordall Neal, shot the victim in his car at about 9:30 p.m. According to witness testimony, the victim was driving in a red car when a light-colored van either slowed or stopped next to the victim's car at the intersection of Park Street and College Avenue in Adrian, Michigan. Gun shots were heard, and the van left the scene immediately. The victim was found badly injured in his vehicle, which belonged to his sister, and died shortly thereafter in the hospital from multiple gunshot wounds. A few minutes after the shooting, defendants were stopped by police because they were driving in a light-colored van which matched witnesses' descriptions of the van involved in the shooting. Neal was in the driver's seat, defendant McGlown was in the passenger seat, and the Daniel defendants were in the back seat. Later, while retracing the route between the shooting and the location where defendants were stopped, police recovered two revolvers, a pistol, and three gloves that had been discarded in the roadway. Bullets from one of the revolvers were found in the victim's vehicle, and bullets from the pistol were found in the victim's body.
>
> Defendants were subsequently charged and tried for murder. The victim's aunt testified that Neal called her after the shooting. Allegedly, Neal had been trying to shoot the victim's sister's boyfriend, Jamal Bradley, because Bradley allegedly robbed Neal's grandmother and shot Neal's uncle. Both the victim and Bradley frequently drove the victim's sister's vehicle, a red car. Neal told the victim's aunt that he had paid his twin uncles to kill Bradley. According to Neal, defendants had shot the victim by mistake because they thought it was Bradley. Neal told the victim's aunt that he was driving and fired no shots.

After a nineteen-day trial, defendants were convicted of first-degree premeditated murder, conspiracy to commit first-degree murder, and felony-firearm. At trial, all three defendants were ordered to wear electronic restraints.

*People v. McGlown*, No. 308231, 2014 WL 3844010, at *1 (Mich. Ct. App. Aug. 5, 2014).

On October 26, 2011, Petitioner's jury found him guilty of first-degree murder, conspiracy to commit first-degree murder, and one count of felony-firearm. On November 18, 2011, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by life imprisonment for the murder and conspiracy convictions.

In an appeal before the Michigan Court of Appeals, Petitioner argued that:

(1) the trial court violated his right to confront the witnesses against him by admitting a witness's out-of-court testimony as substantive evidence; (2) the trial court violated his right to present a defense by recognizing a defense witness's Fifth Amendment privilege against self-incrimination even though the proposed questions could not have yielded incriminating answers; (3) the trial court violated his right to present a defense by precluding all testimony from the defense witness, rather than requiring the witness to invoke his Fifth Amendment privilege on a question-by-question basis; (4) the trial court infringed on Petitioner's right to be presumed innocent by requiring Petitioner to wear restraints or a taser device during trial; and (5) trial counsel was ineffective for failing to request a gunshot

residue test on Petitioner's clothing. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion on August 5, 2014. *See McGlown*, 2014 WL 3844010.

Petitioner raised the same five claims in the Michigan Supreme Court. He subsequently moved for permission to submit a supplemental brief in which he contended that he was innocent of first-degree murder and that his trial attorney was ineffective for not investigating and raising a defense of "mere presence." On March 31, 2015, the Michigan Supreme Court granted Petitioner's motion to file a supplemental brief, but denied his application for leave to appeal because the court was not persuaded to review the issues presented. *See People v. McGlown*, 497 Mich. 982; 860 N.W.2d 628 (2015).

On April 30, 2015, Petitioner signed and dated his habeas corpus petition, and on May 4, 2015, the Clerk of the Court filed the petition. Petitioner alleged as grounds for relief that: (1) the trial court violated his right to confront the witnesses against him by allowing a witness's prior testimony to be read into the record; (2) the trial court violated his right to present a defense by recognizing a defense witness's Fifth Amendment privilege against self-incrimination even though the proposed questions could not have yielded incriminating answers; (3) the trial court violated his right to present a defense by precluding all testimony from the defense witness, rather than requiring the witness to invoke his Fifth Amendment privilege on a

question-by-question basis; (4) the trial court infringed on his right to be presumed innocent by requiring him to wear restraints or a taser device during trial; (5) trial counsel was ineffective for failing to request a gunshot residue test on Petitioner's clothing; (6) the State's highest court erred reversibly by denying his motion to remand for a hearing on his claim about trial counsel; and (7) he is innocent of first-degree murder, and trial counsel was ineffective for failing to conduct an investigation on a defense of "mere presence." This Court granted Respondent's motion for summary judgment and dismissed the habeas petition without prejudice finding that Petitioner failed to exhaust his state remedies for claims six and seven.

On February 23, 2018, Petitioner filed his "amended habeas corpus petition," (Doc. 18), deleting the two unexhausted claims and alleging the following grounds for relief: (1) the trial court violated his right to confront the witnesses against him by allowing a witness's prior testimony to be read into the record; (2) the trial court violated his right to present a defense by recognizing a defense witness's Fifth Amendment privilege against self-incrimination even though the proposed questions could not have yielded incriminating answers; (3) the trial court infringed on his right to be presumed innocent by requiring him to wear restraints or a taser device during trial; and (4) trial counsel was ineffective for failing to request a gunshot residue test on Petitioner's clothing.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (*citing Williams v. Bowersox*, 340 F.3d

667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002). A federal habeas court must presume the correctness of state court factual determinations, and a petitioner may rebut this presumption only with clear and convincing evidence. *See* 28 U.S.C. § 2254(e) (1).

## III. Discussion

### A.   Claim # 1.   The unavailable witness/Confrontation Clause claims.

Petitioner in his first claim argues that the trial court erred in declaring Mr. Slusser unavailable at trial, so as to allow his preliminary examination testimony to be read to the jury.

Petitioner contends that the police and prosecutor failed to act with due diligence in securing Mr. Slusser's attendance at trial, thus, the judge erred in finding Mr. Slusser unavailable to testify at trial and by allowing his preliminary examination testimony to be read into evidence.

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Defendant McGlown complains that the trial court erred in admitting out-of-court testimonial statements by Ronald Slusser, a jail inmate who supplied critical evidence against him. Defendant McGlown challenges the trial court's ruling that the prosecutor employed due diligence in seeking to produce Slusser for trial, and asserts that he lacked an opportunity to fully cross-examine Slusser at the preliminary examination because some information impugning Slusser's veracity came to light only after the examination. We review the trial court's evidentiary rulings for an abuse of discretion. We review for clear error a trial court's findings of fact, including a finding of due diligence.
> …………………………………………………………………………..

In this case, the parties agreed that the prosecutor had subpoenaed Slusser to appear for trial; Slusser appeared at trial and agreed that his subpoena would extend through a forthcoming trial date, and Slusser did not later reappear for trial due to his brief stay in an Indiana psychiatric hospital. The hospital intended to promptly release Slusser, but Slusser expressed an unwillingness to reappear in Michigan because of his belief that another Michigan county had issued a warrant for his arrest. The undisputed facts lead us to conclude that the trial court did not clearly err in finding Slusser unavailable on the basis that he had persisted "in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." MRE 804(a)(2).

We further conclude that the court correctly admitted Slusser's preliminary examination testimony in conformity with MRE 804(b)(1). MRE 804(b)(1) protects against a hearsay-based exclusionary challenge "[t]estimony given as a witness at another hearing of the same or different proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Slusser's preliminary examination testimony occurred in the course of the same proceeding against defendants. The transcript of Slusser's prior questioning by the three defense attorneys brought to light the self-interested nature of his testimony in several respects and other potential credibility issues inherent in Slusser's testimony. Furthermore, at defendant McGlown's trial counsel's request, the trial court agreed to read his jury the preliminary examination cross-examination of Slusser by defense counsel for all three defendants. Our review of the record reflects that defendant McGlown enjoyed an opportunity and a similar motivation to develop Slusser's testimony through cross-examination during the preliminary examination.

We conclude that the trial court acted within its discretion in admitting Slusser's preliminary examination testimony under MRE 804. Because the trial court correctly characterized Slusser as an unavailable witness and defendant McGlown had a pretrial opportunity to cross-examine Slusser, no violation of defendant McGlown's right of confrontation occurred. Furthermore, we reject that defendant McGlown can demonstrate any prejudice, given the other properly admitted testimony by Delbert Schaefer, an inmate housed in a jail cell between defendant

McGlown and Slusser, that defendant McGlown offered detailed admissions to his participation in the shooting.

*People v. McGlown*, 2014 WL 3844010, at \*\*14–15 (internal citations and footnotes omitted).

An exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination. However, this exception does not apply "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408 F. App'x 873 (6th Cir. 2010); *cert. den.* 132 S. Ct. 125 (2011)(citing *McCandless v. Vaughn*, 172 F.3d 255, 265 (3rd Cir. 1999)).

The lengths to which the prosecution must go to produce a witness, such that the admission of the witness' prior, confronted testimony at subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. *Hardy v. Cross,*

565 U.S. 65, 70 (2011)(quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). The Supreme Court noted that "when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Id.*, at 71-72. Significantly, "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Id.* at 72.

"A good-faith effort...is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." *United States v. Cheung*, 350 F. App'x 19, 23 (6th Cir. 2009)(internal quotation marks, citations, and alterations omitted). The Court concludes, based on the steps taken in this case, that the prosecution and law enforcement made a good faith effort to locate Mr. Slusser and present him at trial. *See Winn v. Renico,* 175 F. App'x 728, 739 (6th Cir. 2006); s*ee also Pillette,* 630 F. Supp. 2d at 804. Although there may have been additional steps that the trial judge or the prosecutor or the police could have taken to secure Mr. Slusser's presence, under the AEDPA's deferential standard of review, the Michigan Court of Appeals'

rejection of Petitioner's claim was a reasonable determination, precluding habeas relief.

In addition, Mr. Slusser's  former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, Petitioner and his counsel were present, and the witness was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Pillette,* 630 F. Supp. 2d at 804; *Eastham v. Johnson,* 338 F. Supp. 1278, 1280 (E.D. Mich. 1972).

In *Al–Timimi v. Jackson*, 379 F. App'x 435, (6th Cir. 2010), the Sixth Circuit observed that the Supreme Court in the cases of *California v. Green,* 399 U.S. 149 (1970) and *Ohio v. Roberts,* 448 U.S. 56 (1980) had found no Confrontation Clause violation by the admission of an unavailable witness' preliminary examination testimony because the defendants in both cases had the opportunity to cross-examine the witness at the preliminary examination. *Al-Timini*, 379 F. App'x at 438-39.  At the preliminary hearing in this case, petitioner was represented by counsel, who was given a full opportunity to cross-examine Mr. Slusser, without any restriction by the examining magistrate, and who took advantage of this opportunity to the extent that he saw fit.  The prosecution subpoenaed Slusser, who appeared on the twelfth day of trial and agreed to return.  (ECF 6-27, PageID.1222). Slusser did not reappear for trial due to his stay at an Indiana psychiatric hospital and unwillingness to appear, due to a belief that that another Michigan court had issued a warrant for his arrest on

another matter. Accordingly, the trial judge's decision to admit Mr. Slusser's testimony from the preliminary examination when he was unavailable to testify was not contrary to, or an unreasonable application of clearly established federal law. *Williams,* 759 F.3d at 635-36; *Al-Timini*, 379 F. App'x at 439. The admission of the preliminary examination testimony at Petitioner's trial did not violate his Sixth Amendment right to confrontation. *See Glenn v. Dallman,* 635 F.2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F.2d 1054, 1057 (6th Cir. 1972); *Pillette,* 630 F. Supp. 2d at 804-05.

Petitioner is not entitled to habeas relief in the absence of any Supreme Court precedent to support his argument that his opportunity to cross-examine Mr. Slusser at his own preliminary hearing was inadequate to satisfy the requirements of the Confrontation Clause. *See Williams v. Bauman,* 759 F.3d 630, 635-36 (6th Cir. 2014).

Furthermore, Slusser's prior testimony was corroborated at trial by Delbert Schaefer who testified that he was incarcerated for trespass and housed in the cell between Petitioner and Slusser. Schaefer testified that Petitioner told him about the shooting, that they shot the wrong person, and that Petitioner "threw the guns out." (ECF 6-30, PageID.1401-1402). Schaefer further testified once Slusser was placed in the cell on the other side of Petitioner, he heard Petitioner tell Slusser that they

were firing from the front seat and cargo area. (*Id*. at 1402). Petitioner is not entitled to habeas relief on his first claim.

## B. Claim # 2. The right to present a defense claim.

Petitioner next contends that he was denied his constitutional right to present a defense when the trial court recognized a Fifth Amendment privilege against self-incrimination for a key defense witness that the defense wanted to call. The Court believed that the proposed questions could have yielded incriminating answers.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); s*ee also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial

courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals rejected petitioner's claim as follows:

Defendant McGlown next asserts that the trial court deprived him of his right to raise certain defenses at trial. In McGlown's view, the court erred in invoking the Fifth–Amendment–based privilege against self-incrimination for important defense witnesses because there was no reasonable likelihood that testimony by these witnesses could have incriminated them. McGlown further disputes the propriety of the court's actions in barring any testimony by the witnesses, and suggests that the

15

court instead should have demanded that the witnesses invoke their Fifth Amendment privileges in response to each question posed by counsel.

We conclude that defendant McGlown has abandoned these issues by neglecting to identify any relevant matters that the proposed witnesses could prove at trial. While defendant McGlown claims that there was no reasonable probability that a direct answer by the witnesses would have incriminated the witnesses, he failed to explain or support that position.

Even assuming defendant McGlown properly presented this issue for review, we find no error. Both the Fifth Amendment to the United States Constitution and the Michigan Constitution, Const 1963, art 1, § 17, protect a person against compulsion to "be compelled in any criminal case to be a witness against himself." The prohibition contained in the Fifth Amendment "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." A witness may invoke "the constitutional privilege against self-incrimination" when a reasonable basis exists "for [the] witness to fear incrimination from questions." Neither the prosecutor nor the defense may "put a witness on the stand solely to have him assert his Fifth Amendment privilege in front of the jury," irrespective whether the witness possesses a valid privilege against self-incrimination. *People v. Gearns,* 457 Mich. 170, 193–194, 201; 577 NW2d 422 (1998), overruled in part on other grounds in *People v. Lukity,* 460 Mich. 484, 492–494; 596 NW2d 607 (1999). In *Gearns,* the Supreme Court reconfirmed the proper procedure for ascertaining a witness's intent to assert the privilege against self-incrimination:

> [T]he judge must hold a hearing outside the jury's presence to determine if the witness' privilege is valid, explaining the privilege to the witness. If the court concludes the privilege is not valid, it must determine whether the witness intends to proceed with asserting an invalid privilege. If the witness does so intend, then the witness may not be called. [*Id.* at 202.]

16

In this case, the trial court properly held hearings outside the presence of the jury and determined that each of the proposed witnesses had a valid privilege. Defendant further claims that the witnesses should have been questioned in front of the jury, and made to assert the privilege question-by-question. However, a witness may not be put on the stand only to assert his Fifth Amendment privilege. *Id.* at 193–194, 201. For these reasons, we detect no error.

*People v. McGlown*, 2014 WL 3844010, at **15–16 (additional citations and quotations omitted).

When defense counsel called Cordall Neal to testify, Neal invoked his Fifth Amendment privilege not to incriminate himself. (ECF 6-32, PageID.1488-1489). Likewise, Jamal Bradley invoked the Fifth Amendment when he was called to the stand with the jury not in the courtroom. (*Id.*, PageID.1497-1498). The trial court judge excused Neal and Bradley from testifying in light of their assertion of the Fifth Amendment. When defense counsel informed the court that Demond Lee intended to invoke his Fifth Amendment right not to testify, the trial court judge decided that Lee did not have to testify. (*Id.*, PageID.1492-1493).

The state court's rejection of Petitioner's right to present a defense claim was not objectively contrary to or an unreasonable application of Supreme Court precedent. *See United States v. Tisdale*, 952 F.2d 934, 940 (6th Cir. 1992)("It is well settled that the Sixth Amendment's guarantee of compulsory process does not overcome a witness' Fifth Amendment privilege against self-incrimination."); *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005)("Because the Supreme Court has never

held that permitting a witness to assert his or her Fifth Amendment privilege against self-incrimination without taking the witness stand violates a defendant's right to a fair trial, the trial court did not act contrary to clearly established federal law when it allowed [the witness] to invoke the privilege before taking the witness stand."). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3.  The visible restraints claim.

Petitioner alleges that the wearing of a Band-it Taser device during his trial infringed on his presumption of innocence.

Respondent argues that this claim is procedurally defaulted.

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Court will address Petitioner's claim on the merits for judicial economy.

Petitioner challenged the use of electronic restraints on direct appeal. The Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing on the claim that defendants were prejudiced by the use of restraints at trial. On remand, the trial court conducted a thorough evidentiary hearing.

James William Daly, who represented Petitioner McGlown, testified that he did not object to the electronic device worn by Petitioner.  Daly expressed his safety concerns and testified  "[I] don't think I'd been involved in a case in 35 years where I

was more concerned for my safety or my client's safety than I was during this trial." (ECF 6-41, PageID.2215).

Following the evidentiary hearing, the trial court judge elaborated on the reasons for ordering the defendants to wear the electronic restraints:

> This Court sought expertise from Lieutenant [James] Craig, as the record reflects during this evidentiary hearing, with regard to physical security. A great deal of consideration was given to the number of visitors that might accompany three defendants and a deceased victim's family, that the visitors would be in close proximity to one another, that one defendant in particular [McGlown] was demonstrating significant difficulty adjusting to the jail setting. There was suggestion at pretrial activity that Defendant Leonard McGlown's theory of the case [pointing guilt at the Daniel defendants] might be such that would create a problem, although that was not confirmed until we were actually in the courtroom on the record.

*People v. McGlown*, 2014 WL 3844010 at *3.

The trial court judge also articulated in detail the reasons chosen for utilization of the particular Band-It device:

> The Band–It device was specifically chosen so as to avoid any knowledge by jurors, discomfort to defendants, any ... presupposition of punishment ... or anything other than necessary measures. There is nothing to suggest that the device was seen by jurors, ... or that we ought to question whether or not the jury was distracted or influenced by a device. That same device is what allowed the three defendants to view evidence presented outside of this room, in the parking lot of the courthouse, and to stand in the presence of the jury free of any indic[i]a ... or influence of restraint. Every measure the Court could take to prevent any influence or to taint their presence in the courtroom was avoided. The presumption of innocence remained in tact [sic]. The ... Band–It device did not interfere with their ability to relate, communicate or to participate in their own defense. The dignity of the proceeding remained in tact [sic] ...

> If the electronic device was seen, its appearance or familiarity or likeness to a ... athletic wrap would have undermined any prejudice.

*People v. McGlown*, 2014 WL 3844010, at *4.

In *Deck v. Missouri*, 544 U.S. 622, 629 (2005), the U.S. Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."

*Deck's* facts and holding, however, "concerned only visible restraints at trial." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008). Here, both the trial court judge and the Michigan Court of Appeals factually found that Petitioner had failed to establish that his leg restraints were visible to the jurors at his trial. In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual findings made by a state appellate court on the basis of their review of trial court records. *See Treesh v. Bagley*, 612 F.3d 424, 430. n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001)(citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

The Michigan Court of Appeals initially found that Petitioner's claim was unpreserved but also found that the trial court acted within its discretion in requiring the defendants to wear electronic devices. The Michigan Court of Appeals also held that there was ample support for the trial court's conclusion that the defendants were not prejudiced by the restraints as follows:

> Ample evidence supports the trial court's finding that neither jury observed the electronic restraints on defendants Paul Daniel and McGlown, given that the restraints were small in size and placed underneath defendants' pants between their knees and ankles. Moreover, the trial court took efforts to ensure the restraints were not seen by the jury. Furthermore, the restraints resembled an athletic band, and did not have the notorious appearance of a standard shackle. For these reasons, defendants were not prejudiced as a result of the restraints, and we do not agree that it is necessary for the jurors to testify regarding whether they saw the restraints.

*People v. McGlown*, 2014 WL 3844010, at *5.

The Michigan Court of Appeals rejected Petitioner's claim finding that the claim is unpreserved, because Petitioner "raised no objection to the electronic restraint," and then rejected the claim on the merits. *People v. McGlown*, 2014 WL 3844010, at *2.

Furthermore, there is no indication that the jurors saw the restraint device on Petitioner's leg, which was placed under his pant leg. In addition, there is no evidence that the jurors would have recognized the device as a restraint. *Accord Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 842-43 (6th Cir. 2017) (finding stun belt was not a visible restraint because there was no indication that

jurors recognized bulge under defendant's shirt to be a restraint). When an electronic restraint is not visible, "there is not a violation of clearly established federal law sufficient to grant the writ." *Earhart v. Konteh*, 589 F.3d 337, 349 (6th Cir. 2009). The Sixth Circuit Court of Appeals also recognized that "the Supreme Court has yet to consider the issue of whether and when a trial court, consistent with constitutional protections, may order a defendant to wear a stun belt during his trial." *Id.* at 347-348. Habeas relief is available only when a claim adjudicated on the merits in the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

The factual finding by the trial court judge and the Michigan Court of Appeals that the Band-It device, placed on Petitioner's legs, were not visible to the jurors is binding on this Court unless Petitioner can show that it is clearly erroneous. *See Earhart v. Konteh,* 589 F.3d at 349 (6th Cir. 2009)(citing 28 U.S.C. § 2254(e)(1)). Petitioner is not entitled to habeas relief on his shackling claim, because he has presented no evidence that the Band-It device was visible during his trial. *Mendoza,* 544 F.3d at 655. Moreover, even if utilization of the device presented a "close case" to the Michigan courts, this Court is not free to hold that the Michigan Court of Appeals' rejection of the petitioner's claim was objectively unreasonable. *See*

*Mendoza*, 544 F.3d at 655.  Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4.  The ineffective assistance of trial counsel claim.

Petitioner alleges that defense counsel was ineffective by failing to ask to have his clothes tested for gunshot residue. Petitioner submits that lack of gunshot residue on his clothing would support his position that he was merely present in the van.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim

of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner has failed to satisfy the *Strickland* standard for establishing the ineffectiveness of trial counsel for several reasons.

First, petitioner failed to offer the state courts or this Court any evidence that testing petitioner's clothing would establish the lack of gunpowder residue on his clothing. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). To establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, a habeas petitioner must make more than merely speculative assertions. *See Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir. 1985). Because Petitioner's claim about the gunshot residue test is merely speculative, he fails to show that counsel was ineffective in failing to request such a test.

Secondly, Petitioner cannot overcome the presumption that counsel's decision to forego testing of the clothing for gunshot residue was a valid strategic choice. Defense counsel knew that trial testimony from two witnesses indicated that Petitioner discharged a gun at the time of the shooting. Defense counsel's decision to not request gunshot residue tests, to avoid the discovery of incriminating gunshot residue on Petitioner's clothing, was a reasonable strategy that defeats Petitioner's claim. *See Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015)(State court did not unreasonably apply *Strickland* in rejecting habeas petitioner's claim that trial counsel was ineffective in forgoing gunshot residue (GSR) testing; state court reasoned that counsel made tactical decision to forgo GSR testing because such testing could have proven detrimental to prisoner while offering little chance to improve his case, that prisoner was able to argue at bench trial that absence of such residue on his hands played to his favor, and to argue that State, by neglecting to test a shirt, failed to satisfy its burden of proof).

Moreover, Petitioner is unable to establish that he was prejudiced by counsel's failure to pursue the gunshot residue testing because even if the tests had come back negative with respect to petitioner's clothing, the forensic expert testified that such tests are not conclusive because the absence of gunshot particles does not necessarily mean that the person did not discharge a weapon. (ECF 6-27, PageID.1255). *See Nickerson v. Gidley*, 2015 WL 7756148 at *7 (E.D. Mich. Dec. 2, 2015) (Parker,

J.)(Petitioner unable to establish that he was prejudiced by counsel's failure to pursue the gunshot residue testing because even if the tests had come back negative with respect to Petitioner's clothing, a forensic expert testified at trial that such tests are inconclusive as the absence of gunshot particles does not necessarily mean that the person did not discharge a weapon).

The record reflects that defense counsel strategically utilized the absence of a gunshot residue test, and reiterated the testimony given by the firearms expert:

Q. (Mr. Daly) Okay. But you weren't doing GSR tests on clothing because, as far as proving that somebody had fired a weapon, it could be inconclusive. They could have fired a weapon yesterday or some other day, or just been around it or touched it, and it would still show a positive test, right?

A. (The Witness) Those are some of the variables and indicators that you can have, yes, sir.

(ECF 6-27, PageID.1260).

The record also reflects that testing the clothing could have undermined Petitioner's defense of being merely present. The firearms' expert testified on direct:

THE WITNESS: One of the other reasons why we did not analyze this type of gunshot residue is because it is our opinion, meaning those that are within the firearms unit, that because the results don't necessarily indicate that an individual fired a weapon--because you could get the same results by handling a weapon, or the same results could be occurred or effected, if you will, if a person is in the vicinity or close vicinity of a firearm when it's discharged. So you may not necessarily discharge the weapon, but you could have gunshot residue on your clothing. And this is the other reason why we do not conduct that type of analysis.

(ECF 6-27, PageID.1255).

Testing of Petitioner's clothing most likely would have shown gunshot particles on Petitioner's clothing. Such results would have precluded defense counsel from arguing, "If they were able to do a gunshot test for Mr. McGlown, that could have established his innocence, could it not, or at least the fact that he hadn't fired a gun?" (*Id.* at 1260).

It appears from the record that defense counsel made a strategical decision by not testing Petitioner's clothing for residue. This Court will not second guess strategic choices made by defense counsel. *See Strickland,* 466 U.S. at 689. Petitioner is not entitled to habeas relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V. **ORDER**

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be denied leave to appeal *in forma pauperis*.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 6, 2019